STATE OF INDIANA
CIRCUIT COURT OF TIPPECANOE COUNTY

| | | |
|---|---|---|
| Diana Barker, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | 79C01-2112-CT |
| Midland Credit Management, Inc., | : | |
| Defendant. | : | |

## COMPLAINT

### *Background*

1. This is a case about a company's false and misleading accounts that a woman owed debt and the company's conduct of ignoring attempts to rectify the errors and actions to attempt to collect the alleged debt.

2. The defendant is Midland Credit Management, Inc. ("MCM").

3. Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax") and Trans Union LLC ("Trans Union") are each a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

4. Experian and Trans Union are referred to collectively as consumer reporting agencies or the "CRAs."

5. MCM furnished information to CRAs regarding Diana Barker.

6. Experian and Trans Union prepared and issued consumer reports concerning Ms. Barker which include inaccurate information concerning Ms. Barker.

7. MCM claimed to be the owner of a debt for $1,772 (such debt referred to as "debt" and/or "Account"), for which the alleged original creditor was Comenity Bank.

8. Ms. Barker was allegedly obligated to pay a "debt" as defined by 15 U.S.C. § 1692(a)(5) in the amount of $1,772 for the Account.

1

**EXHIBIT "A"**

## *Additional Factual Allegations*

### 1.1  The September 2021 Dispute

9. In September of 2021, Ms. Barker disputed inaccurate credit reporting (the "September 2021 Dispute") concerning the Account, including that she did not owe the alleged debt, with Experian and Trans Union.

10. Experian and Trans Union notified MCM of Ms. Barker's September dispute and the inaccurate information alleged by Ms. Barker.

11. MCM received an Automated Credit Dispute Verification (ACDV) from Experian and Trans Union related to the Account.

12. MCM received from Experian Ms. Barker's September 2021 dispute letter with supporting documentation.

13. MCM received from Trans Union Ms. Barker's September 2021 dispute letter with supporting documentation.

14. At the time MCM received Ms. Barker's September 2021 dispute, Ms. Barker did not owe anything to MCM on the subject account.

15. MCM did not conduct a reasonable investigation with respect to the disputed information.

16. MCM did not review the relevant information provided by Ms. Barker.

17. MCM failed to report to the CRAs that the reporting was inaccurate or incomplete.

18. MCM failed to modify, delete or permanently block the reporting even though the inaccurate information could not be verified.

**EXHIBIT "A"**

### 1.2   The November 2021 Dispute.

19. In November of 2021, Ms. Barker disputed inaccurate credit reporting concerning the Account (the "November 2021 dispute"), including that she did not owe the alleged debt, with Experian and Trans Union.

20. Experian and Trans Union notified MCM of Ms. Barker's November dispute and the inaccurate information alleged by Ms. Barker.

21. MCM received an Automated Credit Dispute Verification (ACDV) from Experian and Trans Union related to the Account.

22. MCM received from Experian Ms. Barker's November 2021 dispute letter with supporting documentation.

23. MCM received from Trans Union Ms. Barker's November 2021 dispute letter with supporting documentation.

24. At the time MCM received Ms. Barker's November 2021 dispute, Ms. Barker did not owe anything to MCM on the subject account.

25. MCM did not conduct a reasonable investigation with respect to the disputed information.

26. MCM did not review the relevant information provided by Ms. Barker.

27. MCM failed to report to the CRAs that the reporting was inaccurate or incomplete.

28. MCM failed to modify, delete or permanently block the reporting even though the inaccurate information could not be verified.

**EXHIBIT "A"**

### 1.3  The December 2021 Dispute.

29. On December 6, 2021, Ms. Barker disputed inaccurate credit reporting ("December 2021 Dispute") concerning the Account, including that she did not owe the alleged debt, with Experian and Trans Union.

30. Experian and Trans Union notified MCM of Ms. Barker's December dispute and the inaccurate information alleged by Ms. Barker.

31. MCM received an Automated Credit Dispute Verification (ACDV) from Experian and Trans Union related to the Account.

32. MCM received from Experian Ms. Barker's December 2021 dispute letter with supporting documentation.

33. MCM received from Trans Union Ms. Barker's December 2021 dispute letter with supporting documentation.

34. At the time MCM received Ms. Barker's December 2021 dispute, Ms. Barker did not owe anything to MCM on the subject account.

35. MCM did not conduct a reasonable investigation with respect to the disputed information.

36. MCM did not review the relevant information provided by Ms. Barker.

37. MCM failed to report to the CRAs that the reporting was inaccurate or incomplete.

38. MCM failed to modify, delete or permanently block the reporting even though the inaccurate information could not be verified.

**EXHIBIT "A"**

## *MCM's Knowledge and Procedures / Additional Facts*

39. MCM knew that the subject reporting was inaccurate.
40. The false information should have been automatically trapped in MCM's system.
41. MCM's procedures include reviewing and considering all relevant information provided by the CRAs.
42. MCM failed to review and consider all of the information provided to it by the CRAs.
43. Alternatively, MCM's procedures include investigating disputes by searching for information reasonably available and accessible to MCM.
44. MCM failed to search for information reasonably available and accessible to MCM.
45. Alternatively, MCM has no procedures in generating the inaccurate reporting.
46. MCM was aware of regulatory findings, opinions, court rulings and jury verdicts that the type of "investigation" MCM conducted was insufficient to constitute a reasonable investigation.
47. Ms. Barker repeatedly notified Defendants of the inaccurate reporting.
48. The subject reporting is inconsistent with established industry standards.
49. MCM falsely represented the legal status of the debt and attempted to collect an amount of money from Ms. Barker that is not permitted by law.
50. MCM acted with reckless disregard for its statutory duties.
51. MCM knowingly and intentionally committed the acts described herein in conscious disregard for the rights of others.
52. All conditions precedent necessary for this lawsuit have occurred or been performed by Ms. Barker.

**EXHIBIT "A"**

53. Furnishers, including MCM, must comply with the requirements stated in https://www.ftc.gov/tips-advice/business-center/guidance/consumer-reports-what-information-furnishers-need-know.
54. MCM failed to provide information that is accurate and complete.
55. MCM provided information that was inaccurate concerning Ms. Barker.
56. MCM, through its agents, were aware, by October of 2021, that Ms. Barker did not owe any money on the subject account.
57. MCM now agrees that Ms. Barker does not owe any money to MCM on the subject account.
58. MCM now agrees that Ms. Barker does not owe any money on the subject account.
59. MCM failure to investigate Ms. Barker's disputes and MCM's initial and continuing false reporting to Trans Union and Experian concerning an account allegedly owed to MCM, despite MCM's knowledge of the falsity of its reporting, are willful and reckless.
60. MCM uses credit reporting as part of a plan to mislead consumers, including Ms. Barker, and to get them to pay money.
61. MCM made false, deceptive and misleading representations and deceptive means when MCM falsely represented Ms. Barker owed money, communicated information to consumer reporting agencies that they knew to be false and incomplete, and falsely represented debt was owed to MCM.
62. The alleged debt MCM attempted to collect was not authorized by any agreement or permitted by law.
63. MCM's conduct was unfair.
64. MCM communicated with CRAs when such communication was illegal.

**EXHIBIT "A"**

## PARTIES

### Plaintiff Diana Barker ("Ms. Barker")

65. Ms. Barker is an individual, a natural person.

66. Ms. Barker has never owned a business.

67. Any obligation that Ms. Barker would have incurred to pay money would have arisen out of a transaction that was solely or primarily for a personal, family, or household purpose.

### Defendant Midland Credit Management, Inc. ("MCM")

68. MCM is a corporation organized and existing under the laws of the State of California.

69. MCM's employees are agents acting on its behalf.

70. At all times relevant to this action and for matters alleged in this counterclaim, MCM employees and attorneys were agents acting on behalf of MCM.

71. MCM is a collection company that, among other matters, contacts consumers in an attempt to collect consumer debt.

72. MCM regularly attempts to collect debt on behalf of Credit One.

73. MCM owns the website found at https://www.MCMcredit.com.

74. MCM maintains a website at https://www.MCMcredit.com

75. MCM believes that https://www.MCMcredit.com is representative of its business.

76. Alternatively, MCM believes that https://www.MCMcredit.com is not representative of its business.

77. MCM did not answer the three (3) foregoing allegations after making a reasonable inquiry.

78. MCM's interactions with consumers includes filing lawsuits against consumers.

**EXHIBIT "A"**

79. MCM's principal purpose is the collection of debt.
80. MCM's sole purpose is the collection of debt.
81. MCM attempts to collect debt on behalf of others.
82. MCM operates a nationwide debt collection business and attempts to collect defaulted debts from consumers in virtually every state, including consumers in the State of Indiana.
83. MCM claims it purchases debt by buying large portfolios of defaulted consumer debts. Any such purchase is for less than ten cents on the dollar, and MCM then attempts to collect the entire amount claimed to be due.
84. MCM has employees that work in Indiana.
85. MCM has an office in Indiana.
86. MCM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another using mail and telephone.
87. MCM is a "debt collector" as defined by 15 U.S.C. § 1692a(6).
88. MCM has been the plaintiff in hundreds of collection lawsuits in Indiana during 2021.
89. MCM has been the plaintiff in hundreds of collection lawsuits in Indiana during 2020.
90. MCM has been the plaintiff in thousands of collection lawsuits in the US during 2021.
91. MCM has been the plaintiff in thousands of collection lawsuits in the US during 2020.
92. MCM does not conduct any business activity other than the collection of debts for others or the collection of debt that it allegedly acquires when it is in default.

**EXHIBIT "A"**

93. All of MCM's revenue comes from debt collection.
94. MCM's net worth exceeds $50,000,000.00.
95. MCM's net worth exceeds $75,000,000.00.
96. MCM's net worth exceeds $100,000,000.00.
97. MCM's 2020 net worth was in excess of $50,000,000.
98. MCM's 2020 net worth was in excess of $100,000,000.
99. MCM's 2020 net worth was in excess of $200,000,000.
100. MCM's 2020 net worth was in excess of $300,000,000.
101. MCM's 2020 net worth was in excess of $400,000,000.
102. MCM's 2021 net worth was in excess of $50,000,000.
103. MCM's 2021 net worth was in excess of $100,000,000.
104. MCM's 2021 net worth was in excess of $200,000,000.
105. MCM's 2021 net worth was in excess of $300,000,000.
106. MCM's 2021 net worth was in excess of $400,000,000.
107. MCM's 2021 net worth was in excess of $500,000,000.
108. MCM's net worth projections for the calendar year 2022 exceeds $50,000,000.00.
109. MCM's net worth for the calendar year 2021 exceeds $50,000,000.00.
110. MCM's net worth for the calendar year 2020 exceeds $50,000,000.00.
111. MCM is owned by a publicly traded conglomerate called Encore Capital Group, Inc. ("Encore").
112. Encore is an enterprise worth over a billion dollars.
113. Encore operates in 15 different countries and owns multiple other debt collection companies, including Midland Credit Management, Inc., Asset Acceptance

**EXHIBIT "A"**

Corporation, Midland Funding, LLC, Atlantic Credit & Finance, Cabot Financial, and Grove Capital Management.

114. In September 2015, Encore (which owns Midland) was charged with violating the Fair Debt Collection Practices Act and the Dodd-Frank Wall Street Reform and Consumer Protection Act by filing "lawsuits against consumers without having the intent to prove many of the debts, winning the vast majority of the lawsuits by default when consumers failed to defend themselves". United States federal regulators, including the Consumer Financial Protection Bureau, filed an enforcement action on Encore Capital for pressuring borrowers "to pay with false statements, with lawsuits and with the use of so-called robo-signed court documents."

115. Encore paid "$42million in consumer refunds and a $10 million penalty" and an injunction to "stop collections on debts totaling more than $125 million."

116. As recently as October 2020, Encore Capital was charged with Continued violations by the CFPB and agreed to pay an addition $78,308.81 in consumer redress as well as an additional $15 million in civil money penalty for continued violations as well as be subject to continued monitoring for an additional 5 years.

117. MCM is a subsidiary of Encore Capital Group, Inc.

118. Encore Capital Group, Inc. has entered into one or more agreements to buy debt with a minimum face value of $3,000,000,000 (Three Billion Dollars), including with Jefferson Capital Systems, Inc.

119. MCM nets profit of hundreds of millions of dollars each year, including 2019 and 2020.

**EXHIBIT "A"**

120. MCM operates in New Delhi, India, San Jose, Costa Rica, the Phillippines and other countries.

121. MCM does not dispute that it has employees in various locations in the United States along with New Delhi, India, San Jose, Costa Rica, the Phillippines and other countries.

122. MCM has admitted to being a debt collector through other court cases.

### REQUEST FOR RELIEF

WHEREFORE, Diana Barker respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against MCM for damages, which includes punitive damages, fees, costs, and all such other relief as is just and proper.

### JURY DEMAND

Ms. Barker demands a jury trial on all issues herein.

Respectfully submitted,
/s/ *Duran L. Keller*
Duran L. Keller (#31743-79)
**KELLER LAW**
P.O. Box 1248
Lafayette, Indiana 47902
Telephone: (765) 444-9202
Facsimile: (765) 807-3388
Email: duran@kellerlawllp.com
*Attorney for Diana Barker*

**EXHIBIT "A"**