UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| DIANA BARKER, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL NO.:  4:22-cv-14 |
| MIDLAND CREDIT MANAGEMENT, INC., | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on the Motion to Compel Depositions [DE 32] filed by the plaintiff, Diana Barker, on August 29, 2022. It is hereby ordered that the Motion [DE 32] be **GRANTED.**

*Background*

The plaintiff, Diana Barker, initiated this matter in Indiana State Court on December 31, 2021, against the defendant, Midland Credit Management, Inc. (Midland), alleging violations of the Fair Credit Reporting Act (FCRA) and the Fair Debt Collection Practices Act (FDCPA). Midland removed the case to this court on March 2, 2022.

It is undisputed that in December 2019, Barker filed a separate collection case against Midland in Indiana State Court. The case concluded in September 2021, when the court denied the Midland's motion for summary judgment and entered summary judgment in favor of Barker concerning the collectability of the account. Then, as stated above, Barker filed the instant lawsuit in December 2021. Midland concedes that it mistakenly verified Barker's account in response to dispute letters it received from her between the conclusion of the collection case in September 2021 and November 2021 because its collection attorney failed to report the entry of the adverse

summary judgment ruling. Midland claims that in November 2021, when it learned of the adverse ruling, it ceased all collection attempts and requested deletion of the tradeline for Barker's account. As a result, Barker is seeking damages for the Midland's alleged violations of the FCRA and FDCPA.

In the instant motion, Barker is requesting that the court compel Midland to produce the following individuals for depositions: dispute investigators, their supervisor, and the person responsible for credit reporting and the credit dispute policy. Barker claims that she intends to use these depositions to establish who the dispute investigators were, what they did, whether they had been properly trained, and whether their compensation package gave them an incentive to push for speed rather than accuracy. Additionally, Barker argues that the depositions are essential in order for her to show the availability of punitive damages in this case.

Midland responded arguing that the only actual damages that Barker is claiming is the costs of postage incurred for mailing the credit reporting dispute letters. Midland claims that Barker is attempting to use this additional discovery to ascertain the value of her claims even though the Midland has provided all information and documents concerning the events at issue, including the complete credit reporting history for the account, spreadsheets showing Midland's receipt and response to the dispute letters, and its policies and procedures for investigating credit reporting disputes. Therefore, Midland argues that engaging in these depositions would be wasteful and unduly burdensome given the amount of damages at issue in this case.

*Discussion*

Pursuant to **Federal Rule of Civil Procedure 26(b)(1),** the scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."

***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351 (1978) (citing ***Hickman v. Taylor***, 329 U.S. 495, 501 (1947)).  A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or provides evasive or incomplete responses.  *See* **Federal Rule of Civil Procedure 37(a).**  The party objecting to the discovery request bears the burden of showing why the request is improper.  *See* ***McGrath v. Everest Nat'l Ins. Co.***, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008).  The court has broad discretion when determining matters related to discovery.  ***Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.***, 755 F.3d 832, 837 (7th Cir. 2014).

In order to be awarded punitive damages under the FCRA, a plaintiff must show that the defendant not only violated the FCRA but did so willfully. **15 U.S.C. § 1681n**; ***Persinger v. Southwest Credit Systems, L.P.***, 20 F.4th 1184, 1197 (7th Cir. 2021). "A willful violation is one committed with actual knowledge or recklessness." *Persinger*, 20 F.4th at 1197. Both parties cite to *Persinger* to support their positions. In that case, the plaintiff filed for bankruptcy, which resulted in much of her debt being discharged. *Persinger*, 20 F.4th at 1189. Included in the discharge was her debt with the defendant. *Persinger*, 20 F.4th at 1189. However, due to a glitch in the defendant's reporting system, and the fact that the plaintiff's debt was under a former last name, the defendant was unaware that the plaintiff's debt had been discharged. *Persinger*, 20 F.4th at 1189. For several months after the debt was discharged, but prior to the defendant being accurately informed, the defendant continued its collection efforts against the plaintiff. *Persinger*, 20 F.4th at 1189. As a result, the plaintiff filed a lawsuit against the defendant for violations of the FCRA and FDCPA which included a claim for punitive damages. *Persinger*, 20 F.4th at 1189. The Seventh Circuit held that the defendant's "procedures – whether for handling bankruptcy notifications or ordering bankruptcy scrubs – were reasonable compliance efforts, not willful violations of the FCRA." *Persinger*, 20 F.4th at 1197.  Additionally, it held that the defendant

"lacked actual knowledge of the bankruptcy, and it did not recklessly disregard the possibility that debt had been discharged," as required for an award of punitive damages under the FCRA. ***Persinger***, 20 F.4th 1198.

The facts in ***Persinger*** are extremely similar to this case. However, at this point, there is not enough evidence for Barker, or the court, to determine if there is a viable claim for punitive damages. The depositions of the employees of Midland are necessary in order to establish whether it acted willfully, or with actual knowledge, when it continued its collection efforts after the adverse summary judgment ruling had been entered.

For the foregoing reasons the Motion to Compel Depositions [DE 32] is **GRANTED**. The defendant is **ORDERED** to produce the relevant dispute investigators, their supervisor, and the person responsible for credit reporting and credit dispute policy.  Additionally, the defendant is **ORDERED** to provide dates of availability for the depositions of these individuals within **60 days** of this Order.

Midland claims that Barker has refused repeated requests for a settlement demand. Barker's attorney is WARNED that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." **28 U.S.C. § 1927**.

ENTERED this 1st day of November, 2022.

/s/ Andrew P. Rodovich
United States Magistrate Judge